## RORABACK *v.* STEBBINS.

### December, 1866.

A judgment confessed by a married woman is not void, but voidable merely; and her husband, if he assented to the sale of property on the execution thereon, is estopped from afterwards claiming it adversely.

After sale of personal property on execution issued on a voidable judgment, whether the property actually belonged to the judgment debtor or to another, a tax, subsequently levied on the debtor, constitutes no lien on the property, and a purchaser of the property at the tax sale acquires no title.

Henry Roraback sued Almas Stebbins, in the supreme court, to recover the value of a barouche sleigh, of which the plaintiff claimed to be the owner, taken and converted by the defendant. The material facts appearing on the trial were as follows: One R. D. Cornwell and Harriet Cornwell (wife of one James Cornwell), were partners in the livery business at Homer, in the county of Cortland, and, as such, were the owners of certain real and personal property. Harriet Cornwell claimed to be the owner of the sleigh in controversy, and both plaintiff and defendant substantially claim title thereto through her. The plaintiff's claim is based upon these facts. Harriet Cornwell being indebted to R. D. Cornwell, on April 12, 1856, confessed a judgment to him for a sum of eighteen hundred dollars.

Harriet Cornwell and her husband occupied a house in the town of Homer, until the month of July, 1857, when they removed to the town of Moravia, Cayuga county. They left this sleigh, together with other sleighs, in the barn, on the premises they had rented and occupied in the town of Homer, and they also left some furniture in the house they had occupied on the same premises. R. D. Cornwell afterward issued an execution upon his judgment, and on June 29, 1857, levied upon this sleigh and other property, as the property of Harriet Cornwell, the defendant in the execution. At the time of the levy by the sheriff, James Cornwell, the husband of Harriet, was present and turned out the property. The sale took place on July 25, 1857, and at the sheriff's sale the plaintiff bid off the sleigh for the sum of one hundred and five dollars. The sleigh was left in the barn, and not moved. One Randall, who owned

the premises, and had rented them to Cornwell and his wife, and had resumed possession of the same, on their abandonment of the premises, which was before the sale, was present at the sale. The plaintiff, when he bid off the sleigh, asked Randall if he could leave it in the barn, and he told him he could, and it remained there until taken away by the tax collector in January, 1858. The plaintiff did not pay the sheriff the amount of his bids; but it appeared that there was an open account between the plaintiff, and Cornwell, the plaintiff in the execution, and on August 16, Cornwell, as such plaintiff, receipted the amount of the plaintiff's bid on the back of the execution.

The defendant claimed title to the sleigh, under the following circumstances:

On August 18, 1857, the assessors of the town of Homer, in said county, assessed the said firm of R. D. Cornwell & Co. in the sum of thirteen hundred dollars, as the value of their real estate, and in the sum of one thousand dollars, as the value of their personal property, upon which assessment the supervisors of said county levied and imposed a tax of twelve dollars and ninety-three cents; and on December 12, 1857, the said board of supervisors issued their warrant to the town collector of said town of Homer, commanding him to collect the amount of said tax, and in case of default to levy the same by distress and sale of the goods and chattels of the persons so assessed. By virtue of this warrant, the collector, in January, 1858, seized the sleigh in question and advertised it, and sold it at public auction, and it was bid off by the defendant for the sum of thirteen dollars and seventy cents, that being the highest sum bid for the same, and the sleigh was delivered to him.

The court charged the jury that the defendant, Almas Stebbins, acquired no title to the sleigh in question, by virtue of his purchase thereof at the tax sale; that the only question in the case for them to determine was, whether the plaintiff or Richard D. Cornwell purchased the sleigh in question, at the execution sale, and was the owner thereof at the time plaintiff demanded it of defendant; that, if plaintiff purchased the sleigh for himself, and he owned it when he demanded it of defendant, he was entitled to recover; but if he purchased for

Richard D. Cornwell and as his agent, and said Cornwell owned it at the time plaintiff demanded it, the jury should find a verdict for the defendant; that plaintiff could not recover, unless the evidence satisfied the jury that he owned the sleigh. To each of these instructions defendant excepted.

The jury found a verdict for the plaintiff.

*The supreme court* at general term were of opinion that as plaintiff had sufficient possession, constructive or actual, to maintain either trespass or trover, the validity of the judgment was immaterial, because defendant did not connect himself with the title which the sheriff's sale sought to defeat. Duncan *v.* Spear, 11 *Wend.* 54. And they held that the tax sale was void for want of jurisdiction, and that even though the warrant were sufficient to protect the collector, this would not help the defendant, who must show title, if at all, through a valid assessment and sale.

Defendant appealed.

*O. Porter*, for defendant, appellant; Cited Townsend *v* Wesson, 4 *Duer*, 342, 344; Yates *v.* St. John, 12 *Wend.* 74; Rotan *v.* Fletcher, 15 *Johns.* 207; Rush *v.* Lyon, 9 *Cow.* 52; Kennedy *v.* Strong, 14 *Johns.* 128; 2 *Bright, Husband and Wife*, 41: 1 *Comst.* 496; 3 *Hill*, 215; 6 *Id.* 534, 635; Marshall *v.* Davis, 1 *Wend.* 109, 112; Barrett *v.* Warren, 3 *Hill*, 348; Pierce *v.* Van Dyke, 6 *Id.* 613; Nash *v.* Mosher, 19 *Wend.* 431; McDonald *v.* Hewett, 15 *Johns.* 349; Prescott *v.* De Forest, 16 *Id.* 159; 2 *Grenl. Ev.* 614, 636, 637; Schermerhorn *v.* Van Volkenburgh, 11 *Johns.* 529; Duncan *v.* Spear, 11 *Wend.* 54; Root *v.* Chandler; 10 *Id.* 111; Ely *v.* Ehle, 3 *N. Y.* (3 *Comst.*) 506; Sterns *v.* Patterson, 14 *Johns.* 132; Aikin *v.* Buck, 1 *Wend.* 467, 469; Cook *v.* Howard, 13 *Johns*, 284; Faulkner *v.* Brown, 13 *Wend.* 64; Watkins *v.* Abrahams, 24 *N. Y.* 72; 14 *How. Pr.* 191; Brunner's Appeal, 11 *Wright*, Pa.; Vanderheyden *v.* Mallory, 1 *N. Y.* (1 *Comst.*) 452; Yale *v.* Dederer, 18 *N. Y.* 265; Owen *v.* Dickinson, 1 *Craig & Phillipps*, 48; Borden *v.* Fitch, 15 *Johns.* 122, 140; Smith *v.* Shaw, 12 *Id.* 257; City of Camden *v.* Mumford, 2 *Dutch.* 49; Harrington *v.* People, 6 *Barb.* 610; Dobson *v.* Pearce, 12 *N. Y.* (2 *Kern.*)

Roraback *v.* Stebbins.

156; Pendleton *v.* Weed, 17 *N. Y.* 72; Bumstead *v.* Read, 31 *Barb.* 661; Griswold *v.* Stewart, 4 *Cow.* 457; Britton *v.* Wilder, 6 *Hill*, 242; Martin *v.* Divelly, 6 *Wend.* 9; Askew *v.* Daniel, 5 *Iredell Eq.* 321; Martin *v.* Mitchell, 2 *Jacob & Walker*, 424; Birdseye *v.* Flint, 3 *Barb.* 500; Slocum *v.* Hooker, 13 *Id.* 536; reversing 12 *Id.* 563; 6 *How. Pr.* 167; 10 *N. Y. Leg. Obs.* 49; Brumskill *v.* James, 11 *N. Y.* (1 *Kern.*) 294; Elliott *v.* Piersal, 1 *Pet.* 328, 340; Chemung Canal Bank *v.* Judson, 8 *N. Y.* (4 *Seld.*) 259; Van Alstyne *v.* Erwine, 11 *N. Y.* (1 *Kern.*) 331; Coffin *v.* Tracy, 3 *Cai.* 129; 16 *How.* 93; 18 *Id.* 371; 5 *Seld.* 205; 2 *Kent Com.* 135, 136; Cropsey *v.* McKinney, 30 *Barb.* 47; Dyer *v.* Vandenberg, 11 *Johns.* 149; Tuthill *v.* Wheeler, 6 *Barb.* 362; 9 *Abb. Pr.* 368; 2 *R. S.* 463, 368 (4 ed. 316, 610); *Dayton's Surr.* 312; 9 *Wend.* 452, 455, 486; Savacool *v.* Boughton, 5 *Id.* 171; Chegaray *v.* Jenkins, 5 *N. Y.* (1 *Seld.*) 376; Henderson *v.* Brown, 1 *Cai.* 92; Trustees of Rochester *v.* Symonds, 7 *Wend.* 392; Sheldon *v.* Van Buskirk, 2 *N. Y.* (2 *Comst.*) 473; People *v.* Supervisors of Queens, 1 *Hill*, 195; Beach *v.* Furman, 9 *Johns.* 229; Patchin *v.* Ritter, 27 *Barb.* 34, 39.

*John H. Reynolds*, for plaintiff, respondent;—Cited, Watkyns *v.* Abrahams, 24 *N. Y.* 72; Buckley *v.* Wells, 33 *Id.* 518; reversing 42 *Barb.* 569; Darby *v.* Callaghan, 16 *Id.* 71; Duncan *v.* Spear, 11 *Wend.* 54; Earl *v.* Camp, 16 *Wend.* 562; Yates *v.* St. John, 12 *Id.* 74; Jackson *v.* Hasbrouck, 12 *Johns.* 213.

BY THE COURT.—DAVIES, Ch. J.—[After stating the facts.—1. As to plaintiff's title to the sleigh. There is no controversy that Harriet Cornwell was indebted to Richard Cornwell, in the amount for which she confessed judgment. It was competent for her to secure payment of such indebtedness out of any property owned by her. She could mortgage, assign or convey any such property for such purpose, and divest her title thereto, and vest the ownership thereof in her grantee, or any one claiming under him.

This court held, in Watkins *v.* Abrahams, 24 N. Y. 72,*

* The decision below in that case is reported as Wotkyns *v.* Abraham, 14 *How. Pr.* 191.

that a married woman could not confess a judgment, under the Code, and that such a judgment would be set aside on her motion. It was held that she was placed on the same footing with an infant, in this respect. It follows, from this, that the judgment is not void, but voidable, merely. If she elects to allow it to stand, and the title of her property, through this instrumentality, to be changed, no good reason is perceived why she may not do so. It has been repeatedly held in this court, that a married woman may effectually dispose of property, which is either hers, or treated by her husband as hers; and even that a mortgage, by the wife, of the husband's goods, was valid, he standing by and assenting to it; that the assent of the husband was only important, as estopping him from claiming the goods as his own, after permitting the wife to deal with them as hers. Edgerton *v.* Thomas, 9 *N. Y.* 40; Sherman *v.* Elder, 24 *Id.* 381; Knapp *v.* Smith, 27 *Id.* 277; Buckley *v.* Wells, 33 *Id.* 518; Sammis *v.* McLaughlin, 35 *Id.* 647. James Cornwell, the husband, is estopped from claiming the sleigh as his property. He was present at the time of the levy by the sheriff, through which this plaintiff claims, and turned out this sleigh to the sheriff, as the property of Harriet Cornwell, the defendant in the execution. He is forever precluded from setting up the contrary. There is no pretense that the title to the sleigh was in any other person. It is, therefore, very clear that the property in the sleigh was in Harriet Cornwell.

The next question is, has that title, by virtue of the judgment, execution and sale, been vested in the plaintiff? In Miller *v.* Earle, 24 *N. Y.* 110, this court held that a judgment, entered upon a confession not authorized by the Code, was good between the parties, and that, when the property of the defendant had been sold under an execution, upon such a judgment, the purchaser's title cannot be impeached by a creditor, not having a judgment or lien on the property, at the time of the levy. It was said in the opinion of one of the judges, that if the defendant in the execution chose to adopt the form of confessing a judgment, and permitting a sale of his property under execution thereon, for the purpose of paying a debt owing by him, it was not perceived that any objection

could be taken by a party, who had acquired a subsequent judgment and lien, to such payment; that the defendant certainly would be estopped from alleging or setting up that the judgment was not valid, or, in other words, was not a judgment; and that, after he stood by and saw his property sold under an execution issued under it, and the proceeds paid over or applied upon his debt, he would be estopped from recalling such payment. Judge JAMES, in the other opinion delivered in that case, observed: "As between the parties themselves, however, the judgment confessed should be held legal and valid: that being so, the levy and sale of property under it was good, as against the defendant and all the world, except judgment creditors, existing and having a lien upon his property. Until the plaintiffs recovered their judgment against Heth (the person confessing the judgment), they had no lien upon his property. Until then, he had a right to dispose of it, or its proceeds, in payment or satisfaction of his debts, or in any other way not fraudulent."

Again: "So in this case, the debt for which the confession was given being *bona fide*, the property levied upon might have been lawfully applied by the judgment debtor, without judgment, to the payment of such debt, at any time before the plaintiff in this suit obtained any legal or equitable lien thereon; and the proceeds of such property having been applied to the payment of such *bona fide* debt, through the instrumentality of a defective judgment, before any legal or equitable lien was obtained upon it, by any other creditor, the property cannot be recalled, nor its proceeds recovered by a subsequent judgment creditor, although the prior judgment is void as to him."

A brief recurrence to the facts presented by the record will show how decisive the doctrine of this case is, when applied to that now under consideration. Assuming, for the present, that the sleigh was the property of Harriet Cornwell, then we have these controlling facts: 1. That she was *bona fide* indebted to Richard D. Cornwell. 2. That through the instrumentality of a judgment, execution and sale thereon, the proceeds of this sleigh, realized on a sale thereof by virtue of said execution, were applied in part payment of said debt. 3. That

such sale took place, and proceeds were paid over, two days before the assessment roll for the taxes for the town of Homer was completed, that being done on the 18th of August, 1857. The tax was not levied and imposed until the annual meeting of the board of supervisors of the county of Cortland, which, in that county, takes place on the Tuesday next after the general election in each year. 1 *Edm. Stat.* 339.

No lien for this tax, upon this sleigh, assuming it to have been the property of Harriet Cornwell, was acquired until some day in November, 1857. At this time all her right and title therein had been disposed of in payment of a debt justly due and owing by her; and, on the authority of Miller *v.* Earle (*ubi supra*), we must hold that the tax was no lien on this particular piece of property, and that the defendant acquired no title thereto by virtue of the tax sale.

It is now contended, on the part of the defendant, that, so far as the proof shows, the sleigh belonged to James Cornwell, the husband of Harriet Cornwell. It is not perceived how this position shows title in the defendant.

If it was the property of James Cornwell, it clearly could not be taken and sold for a tax imposed and levied against Harriet Cornwell. The tax was levied, so far as the persons were concerned, against Richard D. Cornwell and Harriet Cornwell, as composing the firm of R. D. Cornwell & Co. There is no pretense that James Cornwell was ever a member of that firm, or that any tax was levied or imposed against him or upon his property. The warrant to the collector only authorized him to seize and sell the property of the persons whose names were set down in the tax lists, and the name of James Cornwell does not appear there. If, therefore, the sleigh was the property of James Cornwell, the defendant acquired no title to it by virtue of his purchase at the tax sale. Again: this argument has no pertinency, except to establish the proposition that the plaintiff acquired no title, by virtue of his purchase, on the execution sale, on the judgment against Harriet Cornwell. But, as already remarked, James Cornwell is estopped, by his act in turning out to the sheriff this sleigh as the property of Harriet Cornwell, from hereafter setting up or claiming that, in fact, he was the owner of the sleigh. The

Roraback *v.* Stebbins,

defendant is in no position which justifies him in asserting the ownership of the sleigh to be in James Cornwell.

Upon the testimony adduced at the trial, the question legitimately arose, whether, at the execution sale, the sleigh was, in fact, purchased by the plaintiff in the execution, Richard D. Cornwell. The judge, therefore, properly charged the jury, that it was important for them to determine which made the purchase; for, which ever did, was the owner at the time of the demand and conversion ; and that, if the plaintiff purchased the sleigh for himself, and he owned it when he demanded it, he was entitled to recover; but, if the plantiff purchased the sleigh at the execution sale for Richard D. Cornwell, and as his agent, and said Cornwell owned it, then the jury should find a verdict for the defendant.

In all these propositions, the learned justice was undoubtedly correct. If the plaintiff purchased the sleigh for himself, and on his own account, then he unquestionably became the owner thereof, and it was a matter of no moment, whether the plaintiff in that execution required payment of the purchase-money at the time, or give him credit therefor. The important fact appeared that the defendant in that execution had credit for the amount of the bid, on the judgment against her. The plaintiff, in that judgment, was estopped from denying the fact of such payment. The jury, therefore, found, as a fact, that the plaintiff himself became the purchaser of the sleigh at the execution sale; and the conclusion of the law followed, that he thereupon became the owner thereof. The judge, also, very properly, left it to the jury to find, whether the purchase was not made by or for Richard D. Cornwell. If it had been, then he became the owner of the sleigh, and it would have been liable to seizure and sale for payment of the tax levied and imposed on him and Harriet Cornwell; and the defendant, by virtue of the tax sale, would have acquired title thereto. In such case, as the judge told the jury, their verdict should be for the defendant. But the jury ignored this view of the case, and found that the plaintiff had himself become such purchaser, and thereby the owner of the sleigh, and, consequently, entitled to recover the damages he had sustained by the taking and conversion thereof by the defendant.

We have assumed, in the examination of this case, that the tax, and the sale thereunder, levied and imposed upon Richard D. Cornwell and Harriet Cornwell, was, in all respects, legal and regular. In the view we take of this case, we do not deem it needful to express any opinion upon that question, and we wish to be distinctly understood as expressing none. We have disposed of the case on the assumption that the tax was legal and the sale regular.

The exceptions taken to the admission of testimony are wholly unimportant and immaterial, in the light we regard this case. The only exception which had any bearing upon any important question submitted to the jury, was to the admission of proof, on the part of the plaintiff, that he had an open account with R. D. Cornwell, the plaintiff in the execution. Plaintiff, by his bid for the sleigh, the same having been accepted by the sheriff and the plaintiff in the execution, became a debtor to such plaintiff for the amount of his bid. The plaintiff, by crediting such amount on the execution, discharged the defendant therein from such sum, and was estopped from denying payment of that sum by her. For the purpose of showing a fact, certainly not very important, how the matter was adjusted between the purchaser and the plaintiff in the execution, the judge permitted the fact that there was an open account between them to be proved. It was not material or important, and its admission is no ground for a new trial.

Upon a careful examination of the whole case, I am clearly of the opinion that it is has been rightly disposed of, and that the judgment should be affirmed, with costs.

All the judges concurred, except PORTER, J., who did not vote.

Judgment affirmed, with costs.